UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Saimalo T.,<br>　　　　　Plaintiff(s),<br>vs.<br><br>Martin O'Malley, Commissioner of Social Security,<br>　　　　　Defendant(s). | 2:24-cv-01241-MDC<br><br>**ORDER REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Pro se plaintiff Saimalo T. filed a *Motion for Remand* ("Motion") regarding the Administrative Law Judge's ("ALJ") final decision denying her social security benefits. *ECF No. 14*. The Court the GRANTS Motion because the ALJ's opinion is not supported by substantial evidence. The ALJ rejected the expert opinions and instead relied on her own judgment in determining the plaintiff's residual functional capacity.

## I.　BACKGROUND

Plaintiff filed applications for a period of disability and disability insurance benefits on August 17, 2021 alleging disability commencing July 27, 2020. *AR 274-280*. The Commissioner denied the claims by initial determination on March 28, 2022. *AR 133-143*. Plaintiff requested reconsideration of the initial determination on April 1, 2022. *AR 171*. The Commissioner denied reconsideration on September 15, 2022. *AR 145-156*. Plaintiff requested a de novo hearing before an ALJ on October 4, 2022. *AR 197-215*. The ALJ conducted a hearing on May 4, 2023. *AR 99-132*. The ALJ published an unfavorable decision on July 31, 2023. *AR 17-36*. Plaintiff requested that the Appeals Council review the ALJ's decision on August 25, 2023. *AR 270-271*. The Appeals Council denied the request for review on May 9, 2024. *AR 1-6*. On that date, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). The Court has jurisdiction to review the final decision of the Commissioner for substantial evidence and error of law. 42 U.S.C. §§ 405(g); 1383(c).

The ALJ calculated that plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through December 31, 2025. *AR 20, ¶ 1*. The ALJ thereafter used the five-step sequential evaluation process to guide the decision. 20 C.F.R. § 404.1520. At step one, the ALJ agreed that plaintiff did not engage in substantial gainful activity since July 27, 2020. *AR 22*. At step two, the ALJ found that plaintiff suffered from medically determinable severe impairments consisting of degenerative disc disease of the cervical, lumbar and thoracic spine, knee osteoarthritis and obesity. *AR 22*. At step three, the ALJ decided that the impairments did not meet or equal any "listed" impairment. *AR 23* (citing 20 C.F.R., Part 404, Subpart P, Appendix 1). The ALJ assessed plaintiff as retaining the residual functional capacity to perform the demands of work as follows:

> light work as defined in 20 C.F.R. § 404.1567(b) except the claimant is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; she is capable of standing for six hours and she is capable of walking for six hours, but can total no more than six hours on her feet in a normal eight-hour workday; she can push and pull as much as she can lift and carry; she is capable of occasional overhead reaching bilaterally, but can perform frequent bilateral reaching in all directions; she can climb ramps and stairs, climb ladders, ropes, or scaffolds, kneel, crouch, and crawl occasionally, but can stoop frequently; she can occasionally work at unprotected heights and around moving machinery and mechanical parts and operate a motor vehicle; she can occasionally work in extreme cold, extreme heat and vibration.

*AR 24.*

At step four, the ALJ compared the residual functional capacity assessed to the demands of plaintiff's past relevant work as gambling cashier DOT # 211.462- 022 and a check cashier DOT # 211.462-026 and decided that plaintiff could perform that kind of work. *AR 30*. The ALJ concluded that plaintiff did not suffer from a disability between July 27, 2020, and the date of the decision. *AR 31*.

Plaintiff brings multiple arguments: (1) there was a change in the law that should be applied to her pending case where the regulation is silent; (2) the ALJ erred in finding that plaintiff could stand and walk for six hours in an eight-hour workday in interpreting the residual functional capacity (RFC); and

(3) the ALJ failed to provide clear and convincing reasons to reject plaintiff's testimony. *ECF No. 14*. The Commissioner argues that (1) the recent regulatory changes provide no basis for disturbing the ALJ's decision; (2) the ALJ reasonably assessed plaintiff's RFC based on the record as a whole; and (3) the ALJ reasonably discounted plaintiff's subjective symptom complaints. *ECF No. 19*.

## II. DISCUSSION

### A. Legal Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security plaintiffs have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Plaintiff bears the burden of showing any error was prejudicial. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 103, 108 (2019).

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157; *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (quoting *Biestek*); see also *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review"). The District Court's review is limited. See *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1093 (9th Cir. 2014) ("It is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).

The regulations provide that the ALJ must assess all the evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3). "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin*. 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). While the ALJ is responsible for determining the RFC, the RFC must be supported by substantial evidence. "The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (citation omitted). "The ALJ must use some medical evidence of the claimant's ability to function in the workplace' in order to make a proper RFC assessment; 'the ALJ may not simply draw his own inferences about the claimant's functional ability from medical reports." *Gutierrez v. Kijakazi*, No. 2:21-cv-01292-DJA, 2022 U.S. Dist. LEXIS 66403, at 9 (D. Nev. Apr. 8, 2022)(cleaned up).

On the other hand, the ALJ cannot reject medical reports and opinions and instead rely on her own judgment. This Court, and courts in other circuits, have held that when an ALJ rejects the expert opinions in the record and instead relies on her own judgment in determining a claimant's RFC, the ALJ's decision is unsupported by substantial evidence. *See Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 U.S. Dist. LEXIS 39538, at *6 (D. Nev. Mar. 9, 2023)(Noting that it is, "particularly concerning because the ALJ did not rely on any of the medical opinions, <u>finding all of the medical opinions of record unpersuasive.</u>")(emphasis in original); see also *Rosado v. Sec'y of Health & Human Servs*., 807 F.2d 292, 293 (1st Cir. 1986); *Jakubiak v. Berryhill*, 337 F.Supp.3d 80 (D. Mass. 2018); *Maniscalco v. Colvin*, 167 F. Supp. 3d 207, 217-18 (D. Mass. Mar. 3, 2016); *Beyene v. Astrue*, 739 F.Supp.2d 77, 83 (D. Mass. 2010). A lay person is not qualified to interpret raw medical data to determine a claimant's RFC unless the impairments are so mild that they pose no significant functional limitations. *Manso-*

*Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *Rosado*, 807 F.2d at 293-94; *Jakubiak*, 337 F.Supp.3d at 85 (citation omitted); *Maniscalco*, 167 F.Supp.3d at 218-19; *Beyene*, 739 F.Supp.2d at 83 (citation omitted).

## B. Analysis

Plaintiff is a 275-pound woman, over sixty years old, that needs knee replacement surgery due to advanced osteoarthritis changes of her bilateral knees. *AR 47, 151-153, and 686*. The ALJ found that plaintiff's back pain, knee arthritis, and obesity are all severe. The ALJ concluded that plaintiff can walk and stand for six hours in an eight-hour workday. The ALJ's RFC is not supported by substantial evidence. While the ALJ summarized the medical evidence, it is not entirely clear how the ALJ then translated that evidence into an RFC. As the ALJ noted, plaintiff's medical records showed that plaintiff's health often fluctuated, improving and declining, at various times. *AR 25-27.* The ALJ found that all the medical opinions of record were unpersuasive, except for one, that she found to be only "somewhat persuasive." The ALJ's rejection of the medical opinions was not based on contradicting medical opinions but on her own, independent and subjective perspective. The ALJ, however, is not a doctor and is not qualified to offer diagnoses or to offer medical opinions as to the limitations that flow from the medical diagnoses. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities," however, "as a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms." *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam). There are no medical opinions in the record that support the ALJ's RFC assessment. The ALJ erred by assessing plaintiff's RFC without support from the medical opinion evidence.

### a. The ALJ Found David Silverberg, MD's Opinion to Be Somewhat Persuasive

The ALJ found that the opinion of David Silverberg, MD, who treated her for her knees in December 2022, to be somewhat persuasive. The ALJ noted that Dr. Silverberg, after treating plaintiff

with Kenalog and lidocaine injections, stated that, "Patient can weight bear as tolerated bilateral lower extremity." *See AR 29 and 709*. The ALJ stated that Dr. Silverberg's finding, "really does not offer much in the way of a limitation, but as simply advising the claimant after her injection, which he noted provided immediate relief to her knee." *AR 29*. Dr. Silverberg referred plaintiff to her primary care doctor regarding her obesity. *AR 709*. Dr. Silverberg also recommended a total knee arthroplasty, but that she wanted to wait until after her scheduled spine surgery. *Id*. Dr. Silverberg did not treat plaintiff for her back pain or obesity, so it is not clear how the ALJ formulated her RFC with this record that pertained only to plaintiff's knee pain. It is also not clear what parts of Dr. Silverberg's opinion that she found to be unpersuasive, given that she only found it to be somewhat persuasive.

### b. The ALJ Rejected the Other Medical Opinions

The ALJ found the rest of the medical opinions to be unpersuasive. At the request of the Administration, plaintiff attended a consultative examination performed by neurologist R. Kriby Reed, M.D. *AR 629-633*. Dr. Reed reviewed imaging reports, performed a clinical evaluation, and examined Ms. plaintiff. *Id.* On examination, Dr. Reed noted a normal neurological examination but noted an antalgic gait; difficulty toe/heel walking; unable to attempt tandem walking; unable to kneel; inability to bend at the waist to take off and put on shoes. *Id.* Dr. Reed concluded that while plaintiff did not need a cane for neurological reasons, her physical limitations related to her weight in combination with her knees would limit her to sedentary work. Dr. Reed opined that plaintiff could stand two hours and sit six hours and lift up to ten pounds occasionally and less than ten pounds frequently. *AR 633-635*. The ALJ rejected Dr. Reed's opinion stating that at the time of the examination plaintiff, "was only[1] getting Kenalog and lidocaine injections and receiving refills on her medications." *AR 28*. The ALJ appears to

---

[1] It is not clear if the ALJ is characterizing these injections as conservative treatment, given her use of the word "only" here. *See, e.g., Gilliland v. Saul*, 821 Fed. App'x 798, 799 (9th Cir. 2020) (finding the ALJ erred in characterizing treatment as conservative where the plaintiff received "several pain medications and trigger point injections").

find, but it is unclear, that plaintiff had total relief with injections. Such a conclusion is contrary to the medical records which show plaintiff did not have total relief. For example, Dr. Silverberg's February 2022 notes indicate that plaintiff reported two months of improvement on the left knee but only two weeks of improvement on the right knee. *AR 692*. In December 2022, plaintiff reported five months improvement on the left knee but at her next appointment she reported only three months of improvements. *AR 59*. The ALJ cannot cherry-pick or isolate the record. *See Fidel R.P., v. O'Malley.*, No. 3:24-CV-02145-JSC, 2024 WL 4589204 (N.D. Cal. Oct. 28, 2024) citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error when the ALJ's decision did not account for the record "as a whole," but rather relied on "cherry picked" evidence).

In March 2022, the first state agency physician, Dr. Bui, agreed with Dr. Reed that plaintiff would have significant limitations in standing and walking but opined that plaintiff could stand and walk for four hours in an eight-hour workday and was limited to sedentary work. *AR 137-142*. Dr. Bui characterized the cervical disc disease as "mild" based on imaging results from 2019. *AR 142*. The last record reviewed by Dr. Bui was the March 16, 2022, consultative report by Dr. Reed. *AR 136*.

In September 2022, the second state agency doctor, Kerry Novak, M.D., reviewed additional records and agreed with Dr. Reed, and limited plaintiff to standing only two hours in an eight-hour workday. *AR 149.* In evaluating the supportability and consistency of Dr. Reed's medical opinions, Dr. Novak noted that it was "supported by other objective evidence in the file." *AR 149*. Contemporaneous records from Nevada Spine Clinic further t revealed severe progressive cervical myeloradiculopathy. *See Nevada Spine Clinic treatment records from June and August 2022 at AR 712, 714, and 716, see also generally AR 710-720*. Updated imaging results from Nevada Spine revealed severe multilevel stenosis with chronic indentation/compression of the spinal cord anteriorly, worse at C4/5 and C6/7 with severe bilateral stenosis at C5/6-C6/7, and treatment notes that documented constant sharp neck pain. *AR 147, 644, 656, 658, 663-644, 665, 667, and 712.*

The records from Nevada Spine document plaintiff's concerns about surgery. *AR 712*. Orthopedist, Dr. Poelstra at Nevada Spine noted that plaintiff was both interested in cervical surgery yet concerned. *Id*. Dr. Poelstra noted that plaintiff was not improving and will need to have surgery, but she is very concerned, noting she would have to discuss surgery with her family. *Id*. Dr. William Jacks appears to have ordered an MRI of the thoracic spine, which also revealed significant findings not reviewed by Dr. Reed or Dr. Bui. These findings are of a highly technical nature (such as ligamentum flavum buckling, multiple lobulated T1 and T2 hypointense structures resulting in effacement of ventral subarachnoid space). *AR 666*. It is not clear if the ALJ evaluated any medical opinions related to this record, as the ALJ does not have the educational background and training needed to understand how to determine what sort of limitations could arise from these findings. See *Elodia H. v. O'Malley*, No. 2:24-CV-00022-MDC, 2024 WL 4235072 *3 (D. Nev. Sept. 18, 2024) (finding a lay person is not qualified to interpret raw medical data to determine a claimant's RFC unless the impairments are so mild that they pose no significant functional limitations).

Dr. Novak cited to objective findings of the left knee which demonstrated moderate to severe collapse of the medical and patellofemoral compartment; osteophytes at the tibial plateau; moderate joint space narrowing at all compartments; osteophytes present in all three compartments of the knee joint consistent with moderate osteoarthritis; and fibrillation in both the medial and lateral menisci consistent with meniscus tears; with findings consistent with moderate to severe left knee deformity. *AR 151-153*. On the right knee there was moderate collapse of the medical and patellofemoral compartment; osteophyte formation of the medial femoral condyle and medial tibial plateau; and findings consistent with osteoarthritis right knee deformity. *Id*.

The ALJ rejected this opinion because "the consultant did not discuss which treatment notes included the cane or assistive devices." *AR 28*. Whether plaintiff needed a cane or not, Dr. Novak assessed a limitation to standing and walking two hours a day consistent with Dr. Reed who found that

while plaintiff did not need a cane, she was still limited to standing only two hours a day. *AR 634*. The ALJ rejected Dr. Novak's opinion because Dr. Novak did not consider that the claimant had yet to engage in physical therapy. *AR 28*. The Court finds that the ALJ's rejection of this opinion is vague because she does not explain the relevance or provide an analysis. On the one hand the ALJ seems to imply that (1) plaintiff was not credible because she had not yet engaged in physical therapy, therefore Dr. Novak's opinion was not supported, or (2) that when plaintiff did undergo physical therapy that she improved so much that Dr. Novak's limitation no longer applied. The Court finds that the ALJ's decision here regarding her rejection of Dr. Novak's opinion is vague.

The ALJ also included a vague footnote that states that, "even if the undersigned found the opinion of the reconsideration consultation to be somewhat persuasive, it would not result in a finding of disability given that the claimant could still do her past work even if limited to only [four] hours on her feet in an [eight-hour] day." *AR 28*. However, the Court notes that it was the initial state agency doctor that opined that plaintiff could stand four hours, not the reconsideration doctor. Dr. Novak, on reconsideration, who reviewed additional records and opined that plaintiff was limited to standing only two hours. *AR 149*. The ALJ's findings here are vague, so it is not clear how the ALJ formulated the RFC after she rejected all the medical opinions.

### c. The ALJ Appears to Have Relied on Her Own Judgment When Formulating the RFC

The ALJ's error here is material. The ALJ rejected all the medical opinions in the record except one— Dr. Silverberg's opinion, who only treated plaintiff for her knees—and the ALJ only found his opinion somewhat persuasive. The ALJ appears to have relied entirely on her own judgement regarding plaintiff's severe back pain and obesity. A lay person is not qualified to interpret raw medical data to determine a claimant's RFC unless the impairments are so mild that they pose no significant functional limitations. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *Rosado*,

807 F.2d at 293-94; *Jakubiak*, 337 F.Supp.3d at 85 (citation omitted); *Maniscalco*, 167 F.Supp.3d at 218-19; *Beyene*, 739 F.Supp.2d at 83 (citation omitted). The ALJ's RFC is not supported by substantial evidence. While ALJ summarized the medical evidence, it is not entirely clear how the ALJ then translated that evidence into an RFC, considering that she did not rely on the medical opinions. The ALJ found that the medical opinions did not support the RFC and the ALJ interpreted raw medical data. Because it is unclear how the ALJ derived plaintiff's RFC from the record and because there are no medical opinions supporting the RFC (other than the somewhat persuasive one regarding her knees), the ALJ apparently relied only on the plaintiff's medical records and possibly plaintiff's testimony on assessing the RFC. The Court finds that the ALJ's RFC is not supported by substantial evidence.

### d. The Vocational Evidence is Unclear Pertaining to The ALJ's Finding that Plaintiff Can Stand and Walk for Six Hours a Day

The vocational expert ("VE") testified that a person that would miss work even once a month was unemployable. *AR 126-127*. The ALJ did not elicit testimony from the VE that plaintiff could perform her past relevant work if she could only stand for two hours in a workday. The VE's testimony indicates that she believed that the past work all required standing and walking more than two hours a day. *AR 125-126*. At first the VE testified that a person that could only stand and walk for four hours could perform the past work as a gambling cashier and check cashier. *AR 125-126*. However, on cross examination by plaintiff's attorney as to whether, based on her experience, the jobs as generally performed require standing most of the day, the VE appeared to agree. *AR 129*. The VE acknowledged that the DOT classifies the job as sedentary but testified that "[n]o, she has never seen a gambling cashier that is sitting." *AR 129*. Although evidence provided by a VE is generally expected to be consistent with the DOT, "[n]either the DOT nor the VE ... evidence automatically 'trumps' when there is a conflict." Social Security Ruling ("SSR") 00–4p; *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir.2007) ("when a conflict between a VE's testimony and the DOT arises, the ALJ must make an

inquiry with the VE and then determine whether the VE's "explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]").

The ALJ has a duty to fully and fairly resolve conflicts. The ALJ dropped a footnote that states:

> While the vocational expert had not seen cage cashiers in Las Vegas, she was familiar with check cashiers, so even if she was limited to light work with being able to be on her feet for 4 hours in an 8-hour day and the job of gambling cashier was precluded, she could still perform the work of Check Cashier as generally performed. This would still be consistent with the light exertional level as the claimant would not be significantly limited below the light level.

*AR 31, fn7*.

The VE testified, however, that, "I honestly haven't observed directly anything more than the Cashiers that would occur in Vegas casinos, and I have not visited many more casinos outside of Vegas." *AR 129*. Counsel then asked the VE if she had seen Cage Cashiers sitting in Vegas casinos and she answered "[n]o." *Id.* The ALJ does not resolve this conflict regarding plaintiff's past relevant work as a gambling cashier because the expert conceded that gambling cashiers stand eight hours a day because they do not have chairs, which is outside the ALJ's opinion that plaintiff could stand six hours. The ALJ did not resolve the conflict regarding whether plaintiff can perform the gambling cashier work because based on the expert's testimony if appears that that job does not allow for sitting.

Regarding the check cashier, the VE testified that "[i]n my experience, there is an alternation between sitting and standing for these positions and I have seen positions where it is performed at a seated position, back and forth between seated and standing." *AR 130*. The VE went on to confirm that this would not even be a sit/stand at will but would be based on "the customer and slow" apparently meaning that they could sit down when it was slow. *AR 130*. The ALJ did not address this testimony regarding whether if it was a busy day there would be little to no sitting. None of the medical opinions in the record stated that on a busy day plaintiff could stand more than two or four hours.

Where a VE's testimony appears to be self-contradictory, remand is appropriate. See *Diane B. v.*

*Kijakazi*, No. 21-CV-00794-TSH, 2022 WL 94915 (N.D. Cal. Jan. 10, 2022) (citing *Hamilton v. Comm'r of Soc. Sec. Admin.*, 464 F. App'x 681, 682 (9th Cir. 2012) (remanding when light-work positions described by vocational expert could not accommodate claimant's at-will sit/stand limitation "according to the VE's own testimony"); *Hernandez v. Colvin*, 2014 WL 1800408, at *5 (C.D. Cal. May 6, 2014) (remanding where vocational expert presented conflicting testimony, first stating that an individual capable of only six hours of standing could perform claimant's past relevant work, then conceding that those positions as typically performed required standing throughout an eight-hour day except for the 50 minutes allotted for lunch and breaks); *Garcia v. Colvin*, 2015 WL 2384172, at *13 (S.D. Cal. May 18, 2015) (remand appropriate where ALJ failed to resolve seemingly contradictory testimony by vocational expert).

The Court remands the case for further development to clarify the vocational evidence regarding both the gambling cashier work and the check cashier job. The ALJ should determine whether the new five-year rule applies on remand, whether there is a need for additional vocational testimony, or whether the new rule moots the need for additional vocational testimony.

### C. Conclusion

Since the Court remands this case based on the issues of the RFC, the VE's testimony, and whether plaintiff can stand and walk for six hours in an eight-hour workday, the Court does not reach the issues of the symptom testimony or the change in law issue at the federal level. The Court remands this case to obtain further evidence if needed.

**IT IS ORDERED that:**

1. Plaintiff Saimalo T.'s *Petition* (ECF No. 14) is GRANTED.

2. The Court REMANDS this case for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

3. The Clerk of Court is DIRECTED to enter final judgment VACATING the decision of the

Commissioner of Social Security and REMANDING this case for further proceedings consistent with this Order.

DATED July 22, 2025.

IT IS SO ORDERED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge